ORIGINAL

Stuart C. Talley, State Bar No. 180374
John R. Parker, Jr., State Bar No. 70946
**KERSHAW, CUTTER, & RATINOFF LLP**
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499

Attorneys For Plaintiff

FILED

09 OCT 20  PM 3: 27

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'09 CV 2332 JM    BLM

| | |
|---|---|
| ALEX BOHL, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| NATIONAL ASSOCIATION OF MUSIC MERCHANTS INC.; GUITAR CENTER, INC.; GUITAR CENTER STORES, INC., FENDER MUSICAL INSTRUMENTS CORPORATION; GIBSON GUITAR CORP.; DEAN MARKLEY ELECTRONICS, INC.; and D'ADDARIO & COMPANY, INC. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

BY FAX

Plaintiff, Alex Bohl, alleges as follows:

### INTRODUCTION

1.     The plaintiff, Alex Bohl, is a direct purchaser of a guitar and guitar accessories from one of the defendants named herein.  Plaintiff brings this action on his own behalf and on behalf of a class of purchasers of fretted musical instrument products such as acoustic and electric guitars, amplifiers, pickups, and strings ("Fretted Instrument Products") from January 1, 2005

-1-

1    through the present.

2         2.      The National Association of Music Merchants, Inc. ("NAMM") is an association

3    of musical instrument manufacturers.  NAMM's stated purpose is to engage in activities designed

4    to increase demand for musical instruments and the profits of its members. From 2005 through

5    the present, NAMM organized various meetings and programs for its members.  Plaintiff is

6    informed and believes that at these meetings competing retailers of musical instruments were

7    permitted and encouraged to exchange competitively sensitive information.  Additionally,

8    members developed strategies for implementing minimum advertised pricing and restrictions of

9    retail price competition.

10        3.      In or about 2008 or 2009 the Federal Trade Commission ("FTC") discovered the

11   anticompetitive scheme being perpetrated by the defendants and in March 2009 issued a cease

12   and desist order to the National Association of Music Merchants, Inc. ("NAMM").  In its order,

13   the FTC alleged that NAMM had "permitted and encouraged" acts constituting violations of

14   Section 5 of the FTC Act among its members and that the acts and practices of NAMM

15   "constitute unfair methods of competition in or affecting commerce in violation of Section 5 of

16   the Federal Trade Commission Act, as amended 15 U.S.C. § 45."  The FTC also alleged that

17   absent appropriate relief "such acts and practices, or the effects thereof will continue or recur . . ."

18   The FTC alleged that the "challenged conduct served no legitimate business purpose and resulted

19   in no significant efficiency benefits."

20        4.      The plaintiff alleges that as a result of the anti-competitive conduct alleged herein,

21   he and the Class paid more for Fretted Instrument Products than they would have paid in a truly

22   competitive market.  Plaintiff, therefore, seeks damages, restitution, and other relief on behalf of

23   the class.

24                          **JURISDICTION AND VENUE**

25        5.      The Court has jurisdiction over the claims relating to violations of the Sherman

26   Antitrust Act of 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 15.  Jurisdiction is also proper

27   under 28 U.S.C. § 1332(d)(2).

28

-2-

CLASS ACTION COMPLAINT

6.      Venue is proper in this judicial district under 15 U.S.C. § 22 and 28 U.S.C. § 1391. Several defendants transact business within this district; many of the acts and events giving rise to this action occurred within this district; and defendant NAMM is headquartered in this district.

## PARTIES

7.      Plaintiff Alex Bohl is a resident of Sacramento, California.  During the class period the plaintiff made purchases at Guitar Center that include:

- On or about May 2, 2009, plaintiff purchased an Epiphone hollow-body electric guitar at the Guitar Center.  The guitar was manufactured by Gibson Guitars Corp.
- Throughout the class period plaintiff regularly purchased D'Addario strings at the Guitar Center.  The strings were manufactured by D'Addario & Company, Inc.
- On or about February 7, 2009, plaintiff purchased a Dean Markley acoustic-electric pickup at the Guitar Center.  The pickup was manufactured by Dean Markley Electronics Inc.
- In or about October 2006, plaintiff purchased a Fender Deluxe amplifier and amplifier vacuum tubes at the Guitar Center.  The amplifier was manufactured by Fender Musical Instrument Corporation.

8.      Defendant National Association of Music Merchants Inc. ("NAMM") is a New York corporation with its principal place of business located at 5790 Armada Drive, Carlsbad, California 92008.

9.      NAMM is a trade association comprised of more than 9,000 members, including defendants, that include manufacturers, distributors, and dealers of musical instruments and related products.  Most United States manufacturers, distributors, and dealers of musical instruments are members of NAMM.  NAMM is controlled by its members, including defendants herein.

10.     Defendants Guitar Center, Inc. and Guitar Center Stores, Inc. ("Guitar Center") are a Delaware corporations with their principal place of business at 5795 Lindero Canyon Road, Westlake Village, California and is a retail seller of Fretted Instrument Products.  Guitar Center is a member of NAMM.

-3-

11.     Fender Music Instruments Corporation ("Fender") is a Delaware corporation that maintains its principal place of business at 8860 East Chaparral Road, Suite 100, Scottsdale, Arizona.  Fender manufactures and sells Fretted Instrument Products throughout the United States.  Fender is a member of NAMM.

12.     Defendant, Gibson Guitar Corp. ("Gibson") is a Delaware corporation that maintains its principal place of business in Nashville, Tennessee.  Gibson manufactures and sells Fretted Instrument Products throughout the United States.  Gibson is a member of NAMM.

13.     Defendant, D'Addario & Company, Inc. ("D'Addario") is a New York corporation that maintains its principal place of business Farmingdale, New York.  D'Addario manufactures and sells Fretted Instrument Products throughout the United States.  D'Addario is a member of NAMM.

14.     Defendant, Dean Markley Electronics, Inc. ("Dean Markley") is a California corporation that maintains its principal place of business Santa Clara, California.  Dean Markley manufactures and sells Fretted Instrument Products throughout the United States.  Dean Markley is a member of NAMM.

15.     Plaintiff is informed and believes and thereon alleges that as to all transactions relevant herein, each defendant was an agent of one or more defendants named herein and, as such, was acting within the purpose, course and scope of such agency.  Plaintiff is further informed and believes that each defendant aided and abetted, and acted in concert with and/or conspired with each and every defendant to commit the acts complained of herein and to engage in a course of conduct in the business practices complained of herein.

16.     Various individuals, partnerships, corporations and associations not named as defendants in this Complaint have participated as co-conspirators in the violations of law alleged herein and have performed acts and made statements in furtherance thereof.  The identity of all co-conspirators is unknown at this time and will require discovery.

## TRADE AND COMMERCE

17.     Defendants are involved in interstate trade and commerce, and the activities of defendants as alleged in this action have substantially and adversely affected interstate commerce.

-4-

1   In the conduct of their business, defendants directly or indirectly, have used and use the means

2   and instrumentalities of interstate commerce in furtherance of the acts and communications

3   alleged herein, including but not limited to, the United States postal system, the nationwide

4   transportation system, through and by means of which a substantial amount of the nation's

5   communications, information exchanges, and transportation take place.

6                              **SUBSTANTIVE ALLEGATIONS**

7         18.     "Music product" companies are generally understood to include companies that

8   manufacture, supply or sell musical instruments, accessories and products for amplifying and

9   recording music.

10        19.     According to various industry publications, there are distinct product categories

11  within the music product markets, including the fretted instrument product category, (consisting

12  of acoustic and electric guitars, instrument amplifiers and strings), and pianos, consisting of

13  acoustic and digital pianos, percussion products consisting of drums, cymbals and mallets.

14  Within the Fretted Instrument Product market, guitars are by far the most popular music

15  instruments.

16        20.     According to a Music Trades report published in 2008, the music industry had

17  gross margin of 30% versus approximately 22% gross margins for consumer electronics.  Despite

18  the large gross margins, the industry has been consolidating rather than attracting new entrants.

19  Industry data demonstrates that most Fretted Products are sold through very large music retailers

20  such as Guitar Center.

21        21.     During the class period the Guitar Center has grown dramatically largely through

22  acquisitions of smaller competing guitar retailers.  At the end of 2008, Guitar Center reported

23  annual sales of $1.55 billion compared to total musical instruments sales of $7 billion.

24        22.     Guitar Center is the only national chain that exclusively sells Fretted Instruments

25  and is viewed as dominant in the retail market with 295 stores.  Guitar Center is also the

26  industry's largest mail order operation with annual sales of $2.0 billion.  In fact, Guitar Center is

27  nearly 5 times the size of its nearest competitor, and has a 26.2% market share.  As a result of its

28  size, the Guitar Center has substantial power in the industry and has made it difficult for smaller

-5-

1   retailers to compete.   In fact, in 2008 alone, 171 outlets selling fretted instrument were forced to

2   close.

3         23.   Guitar Center is, according to its own publicly filed financial reports in 2007, the

4   largest customer of many of its suppliers and thus each manufacturer depends on Guitar Center

5   for a substantial portion of its sales of guitars.

6         24.   The musical instrument product market is characterized by significant barriers to

7   entry which enhanced Guitar Center's dominance and influence and allowed defendants to

8   exercise and maintain control over pricing for fretted instruments.

9         25.   Most U.S. manufacturers, distributors, and dealers of musical instructions are

10   members of NAMM.  As the FTC observed in its March 4, 2009 press release, "NAMM serves

11   the economic interests of its members by, among other things, promoting consumer demand for

12   musical instructions, lobbying the government, offering seminars, and organizing trade shows.  In

13   the United States, NAMM sponsors two major trade shows each year, where manufacturers

14   introduce new products and meet with dealers and competing manufacturers, distributors and

15   retailers of musical instruments meet and discuss issues of concern to the industry." *See*

16   http://www.ftc.gov/opa/2009/03/namm.shtm.

17         26.   From at least 2005 through the present, NAMM has organized various meetings

18   and programs for its members at which competing retailers of musical instrument were permitted

19   and encouraged to exchange information and discuss strategies for implementing minimum

20   advertised price policies (also known as "MAP") and restricting retail price competition.

21   Representatives of NAMM determined the type and scope of information exchanged at these

22   meetings.

23         27.   According to the FTC's complaint, "at meetings and programs sponsored by

24   NAMM, competing retailers of musical instruments discussed strategies for raising retail prices

25   and exchanged information on competitively sensitive subjects such as – prices, margins,

26   minimum advertised price policies and their enforcement."  According to the FTC, similar

27   discussions were held among manufacturers.

28         28.   As a result of the anti-competitive conduct of NAMM and its members, the

-6-

defendants were able to impose supra competitive price levels for products in the Fretted

Instrument Product market.  As a result, the price for Fretted Instruments increased at a much

greater rate than the rate of inflation during the Class Period.

29.     The FTC has alleged that no significant pro-competitive benefit was derived from

the challenged conduct.  After analyzing the type of information involved, the level of detail, the

absence of procedural safeguards, and overall market conditions, the FTC concluded that the

exchange of information engineered by NAMM lacked a pro-competitive justification.

30.     The FTC ordered NAMM to cease and desist from:

(a)     Entering into, adhering to, enforcing, urging, encouraging, advocating,

suggesting, assisting or otherwise facilitating any Musical Product Manufacturer or Musical

Product Dealer to enter into, adhere to or enforce any combination, conspiracy, agreement or

understanding between or among any Musical Product Manufacturers or Musical Product Dealers

relating to:

(i)     the retail price of any Musical Product;

(ii)    any term, condition or requirement upon which any Musical Product

Manufacturer or Musical Product Dealer deals, or is willing to deal, with any other Musical

Product Manufacturer or Musical Product Dealer, including, but not limited to, Price Terms,

margins, profits, or pricing policies, including but not limited to Minimum Advertised Price

Policies or Resale Price Maintenance Policies; or

(iii)   the refusal to do business, or the reduction of business, with particular

Musical Product Manufacturers or Musical Product Dealers.

(b)     urging, encouraging, advocating, suggesting, coordinating, participating in,

or facilitating in any manner the exchange of information between or among Musical Product

Manufacturers or Musical Product Dealers relating to:

(i)     the retail price of Musical Products; or

(ii)    any term, condition or requirement upon which any Musical Product

Manufacturer or Musical Product Dealer deals, or is willing to deal, with any other Musical

Product Manufacturer or Musical Product Dealer, including, but not limited to, Price Terms,

-7-

1   margins, profits, or pricing policies, including but not limited to Minimum Advertised Price

2   Policies or Resale Price Maintenance Policies.

3       31.    Defendants' practices have had the following anticompetitive effects, among

4   others, in the relevant market:

5       (a)    Competition in the relevant market has been unreasonably restrained,

6   suppressed, and, in some cases, destroyed;

7       (b)    Potential competitors have been restrained from entering into the relevant

8   market and have been prevented from competing effectively against defendants;

9       (c)    Purchasers of musical instruments have been denied the benefits of

10  competition in a free and open market and have been forced to pay artificially high instrument

11  prices;

12      (d)    Upon information and belief, defendants have enjoyed, and will continue to

13  enjoy, ultra competitive profits to the detriment of competitors and purchasers of musical

14  instruments.

15      32.    The aforementioned anticompetitive effects of defendants' conduct on competition

16  in the relevant market outweigh any conceivable pro-competitive benefits.

17  **A.**    <u>**Market Power**</u>

18      33.    As of those claims for which proof of market power is required (*i.e.*, those for

19  which the rule of "per se" illegality does not apply), the relevant product market in this case is

20  retail sales of products in the fretted instruments product category which includes guitars,

21  amplifiers, and guitar accessories.

22      34.    The relevant geographic market in this case is the United States of America.

23      35.    As small but significant non transitory price increase in the fretted instrument

24  product category would not result in a loss of sales within this product market to sales in other

25  music product categories.

26      36.    By virtue of their power to control prices and exclude competition in the relevant

27  markets(s), defendants at all relevant times possessed market power in the relevant market(s).

28

1    Moreover, at all relevant times defendants possessed dominant shares of the market(s) for retail

2    sales of musical instruments generally and fretted instruments in particular.

3           37.    Likewise, defendants at all relevant times possessed substantial market power in

4    the market(s) for its products, due, in part, to the high level of product differentiation in the

5    industry.  Specifically, defendants:  (a) sold their musical instruments at prices substantially in

6    excess of marginal costs, (b) enjoyed high profits margins thereon, (c) sold such products

7    substantially in excess of the competitive price, and (d) enjoyed substantial barriers to market

8    entry and growth.

9           38.    Defendants exchanged competitively sensitive information that had the purpose,

10   tendency, and capacity to facilitate price coordination among competitors.

11          39.    There is substantial concentration among the firms that manufacture the products

12   in the relevant market(s).

13          40.    Defendants together imposed and enforced minimum retail price maintenance and

14   minimum advertised price policies which were contrary to manufacturers' economic interests

15   because each manufacturer rational economic goal was to increase sales volume rather than

16   terminate retailers.

17          **B.     Market Effects Of Defendants' Conduct**

18          41.    The overall effect of defendant's anti-competitive scheme has been to foreclose

19   and impair competition (and the threat of such competition) from lower-priced musical

20   instruments.  As alleged above, had defendants not improperly foreclosed or stifled actual or

21   potential competitors from competing in markets for their musical instruments, other actual or

22   potential rival manufacturers would have achieved much greater sales than they actually did (or

23   threatened to do), given the cheaper prices that they charged (or could have charged upon entry),

24   and would have posed a far greater competitive threat to defendants.  Additionally, absent

25   defendants exclusionary conduct, barriers to entry of the markets would have been lower, which:

26   (a) would have made it easier for existing or new competitors to enter or expand their positions in

27   the market for musical instruments, and (b) would have caused existing or potential competitors

28   to be attracted to the musical instrument market because of the supra-competitive prices that

-9-

1    defendants were charging. As a result, absent defendants' misconduct, defendants would have

2    rationally perceived that there was a greater threat of potential competition in each of the relevant

3    markets if defendants did not reduce its supra-competitive prices.

4          42.    The presence of unfettered competition from actual or potential competitors, which

5    were selling lower-priced musical instruments, would have forced defendants to lower the prices

6    for its musical instruments in order to remain competitive and/or to counter a perceived threat of

7    additional entry.

8          43.    As a result of defendants' conduct, independent retailers could not compete with

9    nationwide and/or multiregional retailer because the retailers could not price-compete.

10   Accordingly, retailers such as Guitar Center were able to raise prices above and beyond what they

11   could under competitive conditions.

12         44.    During the relevant period, plaintiff and the other members of the Class purchased

13   musical instruments directly from defendants. As a result of defendants alleged illegal conduct,

14   members of the Class were compelled to pay, and did pay, artificially inflated prices for the

15   musical instruments they purchased. Plaintiff would have been able to, *inter alia*, purchase less-

16   expensive musical instruments had potential competitors been able to engage in unfettered

17   competition. The prices that Plaintiff and the other Class members paid for musical instruments

18   during the Class Period were substantially greater than the prices that Plaintiff and the Class

19   members would have paid absent the illegal conduct alleged herein because: (1) the prices of all

20   musical instruments were artificially inflated by defendants' illegal conduct; and (2) Class

21   members were deprived of the opportunity to purchase musical instruments at substantially lower

22   prices. Thus, Plaintiff and the Class have, as a consequence, sustained substantial damages in the

23   form of overcharges.

24                                       **CLASS ACTION ALLEGATIONS**

25         45.    Plaintiff brings this action pursuant to Rule 23(a) and (b)(3) of the Federal Rules

26   of Civil Procedure on behalf of the following Class:

27              All individuals and persons who purchased one or more Fretted
                Instrument Products from any of the defendants from January 1,

28              2005 through the present ("Class Period").

1  Excluded from the Class are the defendants, their co-conspirators, their respective parents,

2  subsidiaries and affiliates, any judge or magistrate presiding over this action and members of their

3  families, as well as any governmental entities.

4      46.    Plaintiff does not know the exact size of the Class since such information is

5  exclusively in the control of defendants.  Plaintiff believes that there are thousands of Class

6  members, and that they are sufficiently numerous and geographically dispersed throughout the

7  United States so that joinder of all Class members is impracticable.

8      47.    Plaintiff's claims are typical of the claims of the members of the Class because

9  Plaintiff and all Class members were damaged by the same wrongful conduct of defendants and

10  their co-conspirators as alleged in this Complaint.

11      48.    Plaintiff will fairly and adequately protect the interests of the Class.  The interests

12  of Plaintiff coincide with and are not antagonistic to, those of the Class.  In addition, Plaintiff is

13  represented by counsel who are experienced and competent in the prosecution of complex class

14  action and antitrust litigation.

15      49.    There are questions of law and fact common to the members of the Class, and

16  those common questions predominate over any questions which may affect only individual

17  members of the Class, because defendants have acted on grounds generally applicable to the

18  entire class.  Among the predominant questions of law and fact common to the Class are:

19          (a)    Whether the alleged combination or conspiracy violated Section 1 of the

20  Sherman Act;

21          (b)    The duration and extent of the combination or conspiracy alleged herein;

22          (c)    Whether defendants' unlawful conduct caused Plaintiff and the Class

23  members to pay more for Fretted Instrument Products than they otherwise would have paid;

24          (d)    Whether defendants intentionally and unlawfully engaged in a scheme to

25  control price and potential competitors from the relevant market;

26          (e)    Whether defendants and their co-conspirators were participants in the

27  combination or conspiracy alleged herein;

28

-11-

1          (f)     Whether defendants conspired and/or engaged in concerted action or

2   unilateral action in restraint of trade;

3          (g)     The effect of the combination or conspiracy upon the prices of Fretted

4   Instrument Products sold in the United States during the Class Period;

5          (h)     Whether plaintiff and members of the Class are entitled to declaratory,

6   equitable, and/or injunctive relief;

7          (i)     Whether plaintiff and the Class have been damaged and the appropriate

8   measure of such damages;

9          (j)     Whether defendants engaged in agreements, contracts, combinations, and

10  conspiracies which had the purpose and/or effect of unreasonably restraining competition and

11  limiting purchasers' access to competing and lower priced Fretted Instrument Products; and

12         (k)     Whether defendants' unreasonably anti-competitive contracts, contribution,

13  and conspiracies have caused plaintiff and other class members to suffer injury to their business

14  or property.

15      50.     Class action treatment is a superior method for the fair and efficient adjudication

16  of the controversy, in that, among other things, such treatment will permit a large number of

17  similarly situated persons to prosecute their common claims in a single forum simultaneously,

18  efficiently, and without the unnecessary duplication of evidence, effort, and expense that

19  numerous individual actions would engender.  The benefits of proceeding through the class

20  mechanism, including providing injured persons or entities with a method for obtaining redress

21  for claims that might not be practicable to pursue individually, substantially outweigh any

22  difficulties that may arise in management of this class action.  There are no difficulties likely to

23  be encountered in the management of this class action that would preclude its maintenance as a

24  class action and no superior alternative exists for the fair and efficient adjudication of this

25  controversy on behalf of plaintiff and the members of the Class.

26  ///

27  ///

28  ///

## FIRST CAUSE OF ACTION

### (Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1)

51.     Plaintiff incorporates by reference all the above allegations as if fully set forth herein.

52.     Plaintiff is informed and believes that beginning in 2005, the defendants and their coconspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the United States.

53.     Specifically, defendants combined and conspired to raise, fix, maintain or stabilize the prices of Fretted Instrument Products sold in the United States.

54.     As a result of defendants' unlawful conduct, prices for Fretted Instrument Products were raised, fixed, maintained and stabilized in the United States.

55.     The contract, combination or conspiracy among defendants consisted of a continuing agreement, understanding, and/or concerted action among defendants and their co-conspirators.

56.     For purposes of formulating and effectuating their contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including but not limited to:

(a)     participating in NAMM meetings to discuss the prices and supply of Fretted Instrument Products;

(b)     communicating to fix target prices, floor prices, and price margins for Fretted Instrument Products;

(c)     exchanging competitively sensitive information among each other to facilitate their conspiracy, including minimum advertised pricing, strategies for raising retail prices, and restricting retail price competition;

(d)     agreeing to manipulate prices and the supply of Fretted Instrument Products sold in the United States in a manner that deprived direct purchasers of free and open competition; and

-13-

1     (e)  selling Fretted Instrument Products to customers in the United States at

2 noncompetitive prices.

3    57.  As a result of defendants' unlawful conduct, plaintiff and the other members of the

4 Class were injured in their businesses and/or property in that they paid more for Fretted

5 Instrument Products than they otherwise would have paid in the absence of defendants' unlawful

6 conduct.

7         **SECOND CAUSE OF ACTION**

8  **(Against All Defendants for Violation of 15 U.S.C. § 1 -Agreements Restraining Trade)**

9    58.  Plaintiff hereby incorporates each preceding and succeeding paragraph as though

10 fully set forth herein.

11    59.  Defendants through their actions described herein conspired to substantially,

12 unreasonably, and unduly restrain trade in the relevant market(s), thereby harming plaintiff and

13 the Class.

14    60.  The relevant product market is Fretted Instrument Products and the relevant

15 geographic market is the United States.

16    61.  The action alleged covers a sufficiently substantial percentage of relevant

17 market(s) to harm competition.

18    62.  The actions of the defendants directly and/or through NAMM constitute concerted

19 action.

20    63.  NAMM is *per se* liable for the creation, maintenance, and enforcement of the

21 agreements under a "quick look" and/or rule of reason standard.

22    64.  Alternatively, NAMM is liable for the creation, maintenance, and enforcement of

23 the agreements under a "quick look" and/or rule of reason standard.

24    65.  There is no legitimate, pro-competitive business justification for defendants'

25 conduct, or any of them, that outweighs their harmful effect.

26    66.  Plaintiff and members of the Class were injured in their business or property by

27 the collusion and conspiracy alleged above which facilitates, enabled, and assisted or further

28 defendants' substantial foreclosure and exclusion of competition in the relevant markets.  Without

1  limiting the generality of the foregoing, plaintiff and the other members of the Class have been

2  forced to pay higher prices for musical instruments than they would have paid in the absence of

3  defendants' unlawful conduct.

4  **THIRD CAUSE OF ACTION**

5  **(Against Defendants Namm and Guitar Center for**
   **Violation of the Sherman Antitrust Act, 15 U.S.C. § 2 - Attempted Monopolization)**
6

7  67.   Plaintiff hereby incorporates each preceding and succeeding paragraph as though

8  fully set forth herein.

9  68.   Guitar Center conspired with NAMM to control prices and exclude or destroy

10  competition in the relevant markets and engaged in other acts with the specific intent to achieve

11  monopoly power in the relevant product market.

12  69.   Guitar Center possesses, and has demonstrated, a dangerous probability of

13  achieving monopoly power in the relevant market.  Guitar Center continues to dominate this

14  market through the unlawful conduct described above, to the detriment of plaintiff and the Class.

15  70.   As a direct and proximate result of Guitar Center's monopolistic conduct,

16  competition in the relevant market has been unreasonably restrained and injured, and plaintiff and

17  the members of the Class have paid supra competitive prices for musical instruments.  As a result

18  of defendant's unlawful conduct, plaintiff and members of the Class have suffered and will

19  continue to suffer damages.

20  **FOURTH CAUSE OF ACTION**

21  **(Against All Defendants for Violation of California's Unfair Competition Law)**

22  71.   Plaintiff incorporates by reference all the above allegations as if fully set forth

23  herein.

24  72.   Defendants' acts and practices, as described herein, constitute unlawful, unfair or

25  fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

26  73.   The utility of defendants' conduct and practices in restricting competition in the

27  musical instruments market is significantly outweighed by the gravity of the harm they impose on

28  plaintiff and the Class.  Defendants' acts and practices are oppressive, unscrupulous or

-15-

CLASS ACTION COMPLAINT

1   substantially injurious to consumers.

2       74.    The above-described unfair, unlawful, and fraudulent business practices conducted

3   by defendants present a threat and likelihood of harm and deception to members of the class in

4   that defendant has systematically perpetrated and continues to perpetrate the unfair, unlawful, and

5   fraudulent conduct upon them.

6       75.    Defendants' acts and practices constitute unlawful business practices in violation

7   of the Sherman Antitrust Act, Sections 1 and 2, as described herein.

8       76.    Plaintiff and the Class have suffered harm as a proximate result of the wrongful

9   conduct of the defendants alleged herein, and therefore bring this claim for restitution and

10  disgorgement.  Plaintiff and the class have suffered injury in fact and have lost money as a result

11  of defendants' acts and practices, described herein, in that they have paid artificially high prices

12  for musical instruments due to defendants' unlawful agreement, combination or conspiracy.

13      77.    In paying the prices they paid for musical instruments, plaintiff and members of

14  the class relied upon defendants to fairly and lawfully charge retail prices that were unaffected by

15  any restraint of trade.

16      78.    Pursuant to Business and Professions Code §§17200 and 17203, plaintiff, on

17  behalf of himself and the class, seek an order of this Court: enjoining the defendants from

18  continuing to engage in the practices described herein.  Plaintiff and the class are further entitled

19  to, and pray for, restitution of all monies owed to them, subject to proof, as a result of defendants'

20  unfair, unlawful and fraudulent practices, along with disgorgement of profits, plus interest and

21  attorneys' fees and costs pursuant to, *inter alia*, Code of Civil Procedure §1021.5.

22

23                              **PRAYER FOR RELIEF**

24      WHEREFORE, plaintiff prays that:

25      A.    The Court determines that this action may be maintained as a class action pursuant

26  to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure with respect to the claims for

27  damages, and declaring plaintiff as the representative of the Class and his counsel as counsel for

28  the Class;

-16-

CLASS ACTION COMPLAINT

1        B.     The Court declares the conduct alleged herein to be unlawful in violation of the

2   federal antitrust laws and the common law of unjust enrichment;

3        C.     Plaintiff and each member of the Class recover punitive and treble damages to the

4   extent such are provided by the law;

5        D.     Plaintiff and each member of the Class recover the amounts by which the

6   defendants have been unjustly enriched in accordance with state law;

7        E.     Defendants be enjoined from continuing the illegal activities alleged herein;

8        F.     Plaintiff and the Class recover their costs of suit, including reasonable attorneys'

9   fees and expenses as provided by law; and

10       G.     Plaintiff and the Class be granted such other, further, and different relief as the

11  nature of the case may require or as may be determined to be just, equitable and proper by this

12  Court.

### DEMAND FOR JURY TRIAL

14       Plaintiff hereby demands a trial by jury on all claims so triable.

15  Dated: October 20, 2009.            Respectfully submitted,

16                           KERSHAW, CUTTER, & RATINOFF, LLP

18                           By: _____

19                             STUART C. TALLEY
                           Attorneys for *Plaintiff, individually and on*
                           *behalf of the proposed Class*

-17-

ORIGINAL

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ALEX BOHL, individually and on behalf of all others similarly situated

**DEFENDANTS**
NATIONAL ASSOCIATION OF MUSIC MERCHANTS INC., et al.

**(b)** County of Residence of First Listed Plaintiff  Sacramento, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Maricopa, AZ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

09 OCT 20  PM 3:25

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Stuart Talley and John R. Parker, Jr., Kershaw, Cutter & Ratinoff
401 Watt Ave., Sacramento, CA  95864, (916) 448-9800

Attorneys (If Known)

'09 CV 2332 JM   BLM

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. sections 1 and 2; 28 U.S.C. § 1332(d)
Brief description of cause:
Agreements to restrain trade/attempt to monopolize/violation of unfair competition law

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ over $5,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 10/20/09
SIGNATURE OF ATTORNEY OF RECORD

BY FAX

**FOR OFFICE USE ONLY**
RECEIPT # 6481  AMOUNT 350.00  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____
MS 10/20/09

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS006481
Cashier ID: msweaney
Transaction Date: 10/20/2009
Payer Name: ONE LEGAL LLC
--------------------------------
CIVIL FILING FEE
  For: BOHL V ASSOC OF MUSIC MERCHANT
  Case/Party: D-CAS-3-09-CV-002232-001
  Amount:        $350.00
--------------------------------
CHECK
  Check/Money Order Num: 3109089
  Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```